IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RHONDA HARRISON,
Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of
Social Security,
Defendant.

Case No. 07-1051-MLB

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a “substantial gainful activity.” At step two, the agency will find non-disability unless the claimant shows that he or she has a “severe impairment,” which is defined as any “impairment or combination of impairments which significantly limits [the claimant’s] physical or mental ability to do basic work activities.” At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant’s impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On June 29, 2006, administrative law judge (ALJ) Ruth L. Kleinfeld issued her decision (R. at 17-22). Plaintiff alleges disability beginning January 23, 2003 (R. at 17). The claimant meets the insured status requirements of the Social Security Act through June 30, 2008 (R. at 19). At step one, the ALJ

determined that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision (R. at 19). At step two, the ALJ found that plaintiff had the following severe impairments: chronic pain post fracture and post multiple surgeries, headaches, and narcotic dependency (R. at 19). The ALJ further determined that plaintiff's depression and headaches are not severe impairments (R. at 20). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 20). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff can perform past relevant work as a cashier in retail sales. Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III. Did the ALJ err in his step two findings that plaintiff's depression and headaches were not severe impairments?**

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect

on his or her ability to do basic work activities.[1] Williams,844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

Plaintiff argues that the ALJ erred by finding that plaintiff's depression was not a severe impairment. Plaintiff has the burden of proof at step two. Plaintiff points to medical evidence diagnosing depression; however, none of the medical evidence cited to by the plaintiff clearly indicates that her depression is a severe impairment; i.e., that it would have more than a minimal effect on her ability to do basic work activities. Dr. Lemons indicated in March 2003 that he believed that plaintiff's depression was "only a mild degree of depression" (R. at 189). Dr. Gordon indicated in his consultative examination of December 2003 that plaintiff has "interpersonal difficulties" worsened by her chronic pain, but does not indicate that this constitutes a severe impairment (R. at 229). Dr. Warrender, who performed a state agency assessment based upon a review of the records, concluded that plaintiff does not have a severe mental impairment (R. at 246). The court finds that the ALJ's determination that plaintiff's depression is not a severe impairment is supported by substantial evidence.

Plaintiff also alleges that her headaches are a severe impairment. In his decision, the ALJ stated that plaintiff "has

the following severe impairments: chronic pain post fracture and post multiple surgeries, **headaches** and narcotic dependency" (R. at 19, emphasis added). Shortly afterwards, the ALJ then stated:

> She has had headaches since age 8, and these headaches are controlled by medication. Therefore, I find the claimant's...headaches are not severe as defined under the Act.

(R. at 20). Thus, the ALJ made contradictory findings on whether plaintiff's headaches are a severe impairment.

Plaintiff had three emergency room treatments for headaches; July 6, 2002, April 4, 2003, and April 19, 2003 (R. at 131-132, 146-147, 149-150). Dr. Nadler stated on October 2, 2002 that plaintiff indicated she had headaches 2 times a month which lasted 4-5 days (R. at 151). Dr. Khanna indicated on December 20, 2003 that plaintiff reported migraines occurring 2 times a month lasting 1-2 days (R. at 225). Dr. Coleman, the 1st state agency consultant, stated on February 12, 2004 that plaintiff was "somewhat limited" when plaintiff has migraines (R. at 251). Dr. Stockwell, the 2nd state agency consultant, stated on June 2, 2004 that plaintiff reported that she took longer to care for herself when she had headaches (R. at 260). Dr. Navato diagnosed plaintiff with chronic migrainous headaches on March 25, 2004 (R. at 185).

The ALJ, as part of his RFC findings, indicated that the plaintiff stated the medications eliminated the headaches (R. at 20). However, that is not a completely accurate account of

plaintiff’s statements and testimony. Plaintiff reported on October 29, 2003 that when she has migraine headaches she takes her medication and lies down to sleep (R. at 72). Plaintiff reported on April 14, 2004 that when she has migraine headaches she takes medication which makes her extremely sleepy and that she lies down in a darkened room with a cold or ice pack (R. at 88). Plaintiff testified on September 20, 2005 that her headaches became worse after a motor vehicle accident (which occurred in 1999, R. at 307), lasting 4-5 days instead of 1-2 days. She has severe migraine headaches ranging from a couple of times a month to once a week (R. at 336-337).

A summary of the medical evidence regarding plaintiff’s migraines could certainly support a finding that the migraines are a severe impairment. Dr. Coleman indicated that plaintiff was “somewhat limited” when plaintiff has migraines, but failed to specify the nature of those limitations. Although the ALJ indicated at one point that her headaches are “controlled” by medication, and that the medication “eliminates” the headaches, it is not clear from the record how effectively the medication controls or how quickly it eliminates the headaches. Plaintiff’s statements and testimony were that she had to take medication and lie down when she had migraines. Because of the conflicting findings by the ALJ on this issue, the court cannot ascertain what the ALJ actually believed regarding the severity of

plaintiff’s headaches or their impact on her ability to work. Therefore, this case shall be remanded in order for the ALJ to clearly articulate whether plaintiff’s migraine headaches are a severe impairment and their impact, if any, on plaintiff’s ability to work.

**IV. Did the ALJ err in his RFC findings?**

According to SSR 96-8p the RFC assessment “must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence.” The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The ALJ found that plaintiff can lift/carry 20 pounds occasionally, 10 pounds frequently, can “sit/stand/walk 6 hours in an 8 hour day”,[2] and must avoid hazardous machinery and

[2]A finding that a claimant can sit/stand/walk 6 hours in an 8 hour day could indicate that the claimant can perform all three functions for a total of 6 hours in an 8 hour day, or it could

climbing ropes, ladders or scaffolds (R. at 20). The ALJ's RFC findings parallel the RFC opinions given by Dr. Coleman, a state agency consultant, on February 12, 2004 (R. at 249-257). Dr. Coleman found that plaintiff can occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, can stand/walk for 6 hours in an 8 hour workday, can sit for 6 hours in an 8 hour workday, can only occasionally climb ramps and stairs, and never climb ladders, ropes and scaffolds, and should avoid concentrated exposure to hazards (R. at 250, 251, 253). However, Dr. Stockwell, the 2nd state agency consultant, indicated on June 2, 2004, that plaintiff could only stand/walk for 2 hours in an 8 hour workday, and can only occasionally balance, stoop, kneel, crouch and crawl (R. at 259-260). The ALJ did not mention these restrictions by Dr. Stockwell, and gave no reason for not adopting Dr. Stockwell's more restrictive limitations.[3]

Plaintiff argues that Dr. Coleman's opinions were made before all the medical evidence was available (Doc. 9 at 11). As plaintiff noted, Dr. Navato indicated on March 25, 2004 that plaintiff has a 40% permanent partial disability to the spine (R. at 185). Dr. Navato also diagnosed plaintiff with chronic

---

indicate that plaintiff can perform each of the three functions for 6 hours in an 8 hour day. On remand, the ALJ needs to clarify this issue.

[3]As defendant correctly notes in his brief, Dr. Coleman and Dr. Stockwell provide the only medical opinions in the record regarding plaintiff's RFC (Doc. 12 at 17).

migrainous headaches and chronic musculoskeletal cervical, shoulder, thoracic, and lumbar strain/pain (R. at 185). Dr. Navato indicated that plaintiff's injury and disability has both a physical and psychological component, noting headache, cervical, shoulder, thoracic and lumbar pain (substantially caused by the motor vehicle accident in 1999), and also noting that psychological intervention would be needed because he indicated that her total pain impairment attributed to mood is great (R. at 185). These opinions by Dr. Navato were not mentioned by the ALJ in his decision. An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

The court would note that the opinions of Dr. Navato came after the report by Dr. Coleman, but prior to the report of Dr. Stockwell, who found that plaintiff had a greater limitation in plaintiff's ability to stand/walk for an 8 hour workday, and also found that plaintiff had greater postural limitations. Therefore, on remand, the ALJ, after considering the opinion of Dr. Navato and the RFC assessment of Dr. Stockwell, shall then, pursuant to SSR 96-8p, provide a narrative discussion of how the

evidence supports each conclusion, and explain how inconsistencies or ambiguities in the evidence in the record were considered and resolved.

Plaintiff also points out that Dr. Coleman's narrative indicates that plaintiff's migraine headaches have not required any emergency room visits (R. at 250). However, as noted previously, the medical record indicates that plaintiff had one emergency room visit in 2002 and two emergency room visits in 2003 due to her migraine headaches. This error in Dr. Coleman's analysis should also be considered by the ALJ when the case is remanded.

**V. Did the ALJ err in his credibility analysis?**

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v.Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining

that a claimant’s complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ’s credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court does not find any clear errors in the ALJ’s analysis of plaintiff’s credibility. However, on remand, the ALJ shall make new credibility findings after making a determination of whether plaintiff’s migraine headaches are a severe impairment, and considering all of the medical evidence, including the opinions of Dr. Navato, Dr. Coleman, and Dr. Stockwell.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on October 11, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge